Eric D. Wilson, OSB #044556
ewilson@oregonemploymentlaw.com
Eric Wilson, P.C.
1 SW Columbia Street, Suite 1850
Portland, Oregon 97204
Phone:  503.880.9372
Fax:  503.208.8026

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VINCENT CAMACHO, an individual; MATTHEW BURNS, an individual;<br><br>            Plaintiffs,<br><br>      v.<br><br>BRS FIELD OPS, LLC, a foreign limited liability company; BLUE RAVEN SOLAR, LLC, a foreign limited liability company;<br><br>            Defendants. | Case No. 3:23-cv-517<br><br>**COMPLAINT**<br><br>1.  Whistleblower Retaliation – ORS 659A.199<br>2.  Health & Safety Whistleblower Retaliation – ORS 654.062 *et seq.*<br>3.  Common-Law Wrongful Termination<br><br>**DEMAND FOR JURY TRIAL** |

For their Complaint, Plaintiff Vincent Camacho and Plaintiff Matthew Burns allege as follows:

### I.  JURISDICTION, VENUE AND PARTIES

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

2. Defendant BRS Field Ops, LLC is a foreign limited liability company created under the laws of the State of Utah with its principal place of business in Utah.

3. Defendant Blue Raven Solar, LLC is a foreign limited liability company created under the laws of the State of Utah with its principal place of business in Utah.

4. Defendant BRS Field Ops, LLC and Defendant Blue Raven Solar, LLC are referred to collectively herein as "Blue Raven."

5. Plaintiff Vincent Camacho ("Camacho") is a resident of Clackamas County, Oregon, who, at all material times, was employed by Blue Raven in and around Multnomah County, Washington County, and Clackamas County, Oregon.

6. Plaintiff Matthew Burns ("Burns") is a resident of Pima County, Arizona, who, at all material times, lived in Clackamas County, Oregon, and was employed by Blue Raven in and around Multnomah County, Washington County, and Clackamas County, Oregon.

7. At all material times, Blue Raven employed Burns and Camacho in Oregon. All or substantially all of the acts and omissions alleged herein occurred in Multnomah County, Washington County, and Clackamas County, Oregon.

8. Blue Raven is vicariously liable for the acts of its agents and employees who were acting within the course and scope of their employment with the company, including all acts and omissions alleged herein.

## II. STATEMENT OF FACTS

9. Blue Raven hired Burns to work as an Installer in Oregon beginning on or around October 29, 2021. A few months later, on or around February 21, 2022, Blue Raven also hired Camacho to work as an Installer in Oregon. After being hired, both men worked for Blue Raven installing solar panels on residential homes in the greater Portland, Oregon, metropolitan area. As part of their job duties, both men performed numerous installation tasks; these tasks included electrical work, such as running electrical wires from inside of homes where they had installed solar panels to the homes' electrical boxes.

10. During their employment, Burns and Camacho received positive feedback on their job performance. This included positive feedback from their Regional Installation Manager,

Homer Contreras. The only discipline either Burns or Camacho received was single, first level "warning" for tardiness, which Contreras issued to Burns and Camacho on April 25, 2022. The warning Blue Raven issued to both men on that date stated that additional incidents of tardiness could result in an "additional write-up" and/or losing the privilege of riding in the company van.

11. Working in the Portland Metro area meant that Burns and Camacho installed solar panels in several Oregon counties, including Multnomah County, Washington County, and Clackamas County. In Clackamas County, Burns and Camacho had previously had one of their solar panel instillations fail inspection because the home in question had a split bus electrical panel—as opposed to a more modern main breaker panel—such that the panel did not meet the requirements of the National Electrical Code (NEC).

12. On May 13, 2022, Burns and Camacho arrived to perform a solar panel installation project at a residence located in Clackamas County, Oregon, at 15014 SE Kronberg Ave. Upon their arrival, both men observed that the house had a split bus electrical panel, which made them concerned that the home would not pass inspection following the solar instillation—as had previously occurred. They were also concerned the installation would present a fire hazard and a safety issue. Thus, they contacted Jason Day, a manager on Blue Raven's design team. Burns and Camacho told Day that the house had a split bus electrical panel and that they were concerned it would not pass inspection without a main electrical panel upgrade. Day told the men not to worry; Day also told the men that if the house later failed inspection, the homeowner could deal with the electrical panel upgrade at that time.

13. Following this call, the install electrician, Chris Zaloznik arrived on-site. Zaloznik was concerned about the home's split bus electrical panel and after examining the panel, he told Burns and Camacho that he believed the home would not pass inspection following a solar panel instillation unless the main electrical panel was upgraded as part of the instillation. Zaloznik then called Day. Burns and Camacho heard Zaloznik tell Day the installation should not go forward without a main electrical panel upgrade because it would not otherwise pass inspection.

Zaloznik then told Burns and Camacho that he did not think the work should go forward absent a main electrical panel upgrade but that Day had told him to move forward with the project.

14.     At that point, Burns and Camacho called Homero Contreras—Blue Raven's Regional Installation Manager, and their supervisor.  Burns and Camacho explained the issue to Contreras—specifically, that the house had a split bus electrical panel and would not pass inspection if the project went forward.  The two men stated that they had been advised not to move forward with the work by Zaloznik absent a main panel upgrade, but that the Design Team was pressuring them to complete the project without an upgrade. The men told Contreras they were not comfortable performing the installation because the project violated electrical codes, would fail inspection, and because the homeowner would later unexpectedly need to pay thousands of dollars for a main panel upgrade.

15.     Contreras told Burns and Camacho that he did not care about their concerns, and that they needed to perform the installation.  Contreras told the men not to worry about electrical codes, or the inspector, or the homeowner, and to do their jobs.  Contreras stated that if the installation failed inspection, the homeowner could deal with it at that time. Burns and Camacho objected, and told Contreras they wanted to talk with the homeowner about the electrical panel issue before doing any work.

16.     In response, Contreras told Burns and Camacho that if they spoke to the homeowner about the electrical issue they would be disciplined or terminated.  Contreras told Burns and Camacho to do the work, and he assured both men that they would be paid the same, regardless of whether the project later failed inspection.  Contreras told Burns and Camacho that he did not want to hear anything else about inspections or electrical codes and that they were to hang up the phone and complete the installation; after further discussion, Contreras grew angry and told the men that they needed to complete the installation regardless of the electrical issues, and that if they would not do so, they needed to leave the job site immediately.

17. Given the choice of performing an unlawful installation and defrauding the customer or leaving the job site, Burns and Camacho made the difficult decision to leave the job site so that they could escalate their complaints both internally and externally.

18. After being forced to leave the job site, Burns and Camacho immediately reported what had happened to the Oregon Occupational Safety and Health Administration (OSHA). In addition, Burns and Camacho drafted—and Camacho sent—a text message to Shae Allen in Blue Raven's Human Resources Department. In this text, the men described Contreras' unlawful directive. The men also described being ordered by Contreras to complete the installation despite the fact that they believed it would fail inspection unless the home's main electrical panel was upgraded. The men noted that they had been threatened with termination by Contreras when they suggested talking with the homeowner about this issue. Burns and Camacho also stated in this text that they had been given an ultimatum to either do the work or leave the job site. The men requested that their concerns be escalated to upper-management within Blue Raven.

19. An hour or two later, Burns and Camacho received a phone call from Ivan, a Division Manager, and Contreras' boss. Burns and Camacho walked Ivan through the issue and told him that Zaloznik had stated that the installation would not pass inspection absent a main electrical panel upgrade. Ivan told the men to not worry about electrical code violations and to instead go back to the job site and complete the installation. Ivan told Burns and Camacho that Blue Raven installs solar panels on houses regularly even though the company knows that the installation will later fail inspection. Burns and Camacho proposed that they be allowed to talk with the homeowner about the need for a main panel upgrade prior to beginning the work. Ivan told Burns and Camacho they could not talk to the homeowner. Ivan then ended the call.

20. Shortly thereafter, HR Manager Allen texted Camacho to say that she had escalated his complaint up the management chain and that his concerns were being looked into.

21. Neither Burns nor Camacho heard back from anyone at Blue Raven. On Sunday afternoon, they contacted Contreras and asked if they should report to work on Monday.

Contreras told the two men that they were suspended for Monday, and that he would be in touch about their job status on a later date.

22.     On Monday May 16, 2022, Allen emailed Burns and Camacho to notify them that Blue Raven had terminated their employment, effective immediately.  In her emails to both men, Allen included a termination notice for Burns and Camacho, which was signed by Contreras.

23.     The termination notice for both men states that they were terminated due to "attendance and timeliness issues," and also because "On 5/13/2022, you failed to follow instructions from Field Applications and myself, your Regional Installation Manager, and walked off the job site."  Of course, neither man was terminated due to attendance issue.  To the contrary, both men had received a single, first level warning about tardiness two weeks earlier.  The notices stated only that continued tardiness would result in another write-up.  As is plainly stated in both termination notices, Blue Raven terminated Burns and Camacho because they refused to engage in conduct that they reasonably believed would violate the national electrical code and because both men then opposed and reported what they reasonably believed was unlawful, unsafe, and fraudulent practices to their managers, to OSHA, to senior management at Blue Raven, and to the company's Human Resources Department.

## FIRST CLAIM FOR RELIEF
## WHISTLEBLOWER RETALIATION – ORS 659A.199

24.     Plaintiffs restate and incorporate by reference paragraphs 1-23, *supra*.

25.     As described above, Plaintiffs engaged in protected activity on May 13, 2022, when they opposed and reported conduct they reasonably believed violated a federal or state law, rule or regulation, including, <u>but not limited to</u>—the National Electric Code, Section 5 of the Federal Trade Act, and Oregon's Unfair Trade Practices Act.

26.     Blue Raven retaliated against Plaintiffs because Plaintiffs opposed and reported conduct they reasonably believed violated a federal or state law, rule or regulation by terminating both Plaintiffs on May 16, 2022.

27. In perpetrating the actions described in the above-paragraphs, Blue Raven violated ORS 659A.199, causing Plaintiffs to suffer damages.

28. Plaintiffs request economic damages based on their lost wages and benefits, in an amount to be determined by a jury at the time of trial.

29. Plaintiffs request non-economic damages based on emotional distress caused by Defendant's unlawful conduct in an amount to be determined by a jury at the time of trial.

30. Blue Raven acted towards Plaintiffs with malice and/or a reckless and outrageous indifference to a highly unreasonable risk of harm. Therefore, Plaintiffs seek an award of punitive damages in an amount to be determined by a jury at the time of trial.

31. Plaintiffs seek their reasonable attorneys' fees and costs for this claim in an amount to be proven at trial pursuant to ORS 659A.885(1) and/or ORS 20.107.

## SECOND CLAIM FOR RELIEF
## HEALTH & SAFETY WHISTLEBLOWER RETALIATION – ORS 654.062 *et seq.*

32. Plaintiffs restate and incorporate by reference paragraphs 1-23, *supra*.

33. As described above, Plaintiffs engaged in protected activity on May 13, 2022, when they opposed and reported (1) conduct that they reasonably believed would create an unsafe workplace, and (2) workplace means and methods they reasonably believed were unsafe, in violation of ORS 654.010, ORS 654.015, and/or ORS 654.022.

34. Blue Raven retaliated against Plaintiffs because of Plaintiffs' protected activity on May 13, 2022, by terminating Plaintiffs because of their protected activity on May 16, 2022, in violation of ORS 654.062 *et seq.*, causing Plaintiffs to suffer damages.

35. Because Plaintiffs were terminated within 60 days of their protected activity, a rebuttable presumption exists, pursuant to ORS 654.062(7), that both Plaintiffs were terminated because of their protected activity.

36. Plaintiffs request economic damages based on their lost wages and benefits, in an

amount to be determined by a jury at the time of trial.

37. Plaintiffs' request reinstatement with back pay, or, alternatively, an award of economic damages commiserate with such relief.

38. Plaintiffs request non-economic damages based on emotional distress caused by Defendant's unlawful conduct in an amount to be determined by a jury at the time of trial.

39. Plaintiffs seek their reasonable attorneys' fees and costs for this claim in an amount to be proven at trial pursuant to ORS 659A.885(1) and/or ORS 20.107.

## THIRD CLAIM FOR RELIEF
## COMMON-LAW WRONGFUL TERMINATION

40. Plaintiffs restate and incorporate by reference paragraphs 1-23, *supra*.

41. At all materials times, the public policy of Oregon prohibited an employer from retaliating against an employee because the employee reported conduct or conditions that the employee reasonably believed were unsafe. This public policy is embodied in the common law, statutes, and regulations of the State of Oregon, including, but not limited to, the following: ORS 654.062, ORS 659.199, *McPhail v. Milwaukie Lumber Co.,* 165 Or App 596, 606 (2000); *Yeager v. Providence Health System Oregon*, 195 Or App 134, 142 (2004).

42. At all material times, the public policy of Oregon prohibited an employer from retaliating against an employee because the employee refused to engage in conduct they reasonably believed was fraudulent, deceptive, and/or contrary to relevant safety codes. This public policy is embodied in the common law, statutes, and regulations of the State of Oregon, including, but not limited to: *Anderson v. Evergreen International Airlines,* 131 Or. App. 726, 733-34 (1994); *Yeager v. Providence Health System Oregon*, 195 Or App 134, 142 (2004).

43. Blue Raven violated the above public policies by terminating Plaintiffs in substantial part because Plaintiffs reported and/or opposed conduct they reasonably believed to be fraudulent, deceptive, and/or contrary to relevant safety codes.

44. Blue Raven's discharge of Plaintiffs was taken in retaliation for Plaintiffs' pursuit

and exercise of Plaintiffs' rights in furtherance of an important public interest.

45.     Plaintiffs request economic damages based on their lost wages and benefits, in an amount to be determined by a jury at the time of trial.

46.     Plaintiffs request non-economic damages based on emotional distress caused by Defendant's unlawful conduct in an amount to be determined by a jury at the time of trial.

47.     Blue Raven acted towards Plaintiffs with malice and/or a reckless and outrageous indifference to a highly unreasonable risk of harm.  Therefore, Plaintiffs seek an award of punitive damages in an amount to be determined by a jury at the time of trial.

### III.  JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all claims and issues to the extent allowed under the law.

### IV.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests the following judgments and relief according to proof:

1.   Economic damages;

2.   Non-economic damages;

3.   Punitive damages;

4.   Reasonable costs and attorney's fees per the statutes cited above;

5.   For prejudgment and post-judgment interest as appropriate and allowed by law;

6.   All such other relief as this Court may deem proper.

DATED this 10th day of April, 2023.

**ERIC WILSON, P.C.**

By:   /s/ Eric D. Wilson
**Eric D. Wilson**, OSB #044556
ewilson@oregonemploymentlaw.com
Phone: 503.880.9372
Facsimile: 503.208.8026
*Attorney for Plaintiff*